UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GERALD BORENSTEIN<br>4205 Norbeck Road<br>Rockville, Maryland 20853<br><br>      Plaintiff<br><br>vs.<br><br>THE CHILDREN'S DEFENSE FUND<br>25 E Street, N.W.<br>Washington, D.C. 20001<br><br>**SERVE:**   Michael B. Trister<br>              1666 Connecticut Ave., N.W.<br>              Suite 501<br>              Washington, D.C. 20009<br><br>      Defendant. | Case No. _____<br><br>Jury Demand |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Gerald Borenstein, ("Mr. Borenstein" or "Plaintiff"), by and through undersigned counsel, and hereby brings suit against The Children's Defense Fund ("CDF" or "Defendant"). As and for his complaint, Mr. Borenstein says as follows:

### PARTIES

1.     Mr. Borenstein is a Maryland resident who was wrongly terminated from his job as CFO of the Defendant.

2.     Defendant is a District of Columbia corporation, with its principal place of business in the District of Columbia.

2199100v.1

## JURISDICTION AND VENUE

3.  Mr. Borenstein claims under 28 U.S.C. § 1332 giving rise to diversity jurisdiction in this Court, in that Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds Seventy Five Thousand Dollars and 00/100 ($75,000.00).

4.  The Court may exercise personal jurisdiction over Defendant insofar as its principal place of business is in the District of Columbia, and the claims arise out of, or relate to Defendant's activities in the District of Columbia.

5.  Venue in this action properly lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 insofar as a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## FACTUAL BACKGROUND

6.  On or about April 19, 2010, Mr. Borenstein began working for Defendant as its Chief Financial Officer and was shortly thereafter appointed Treasurer by unanimous Board approval. Mr. Borenstein earned a Master's in Business Administration from the University of Southern California in 1995, and received a BA in Business Administration and Political Science from Austin College in 1978. Mr. Borenstein has more than 30 years experience serving as a corporate executive and CFO for various non-profit companies, including 5 years as CFO of the non profit, National Council of La Raza; and just under two years as CFO for Defendant.

7.  Mr. Borenstein is of Latino and Jewish decent. At all times material hereto, the senior management of Defendant, including Marion Wright Edelman, President of Defendant, knew Mr. Borenstein's ethnic back ground, and even made fun of it in the presence of other CDF employees. In fact, in or about March, 2010, Marion Wright Edelman made the following

2199100v.1

racially and religiously discriminatory remark about Mr. Borenstein " What's a Jewish boy doing being born in Mexico."

8. Mr. Borenstein regularly worked more than 60 hour weeks for CDF. Upon Mr. Borenstein's arrival at CDF, he found grossly mismanaged operations, including, but not limited to: inability to survive regular audits, misuse of earmarked donor funds for undesignated purposes, misdirection of 501(c)(4) funds and 501(c)(3)funds, reckless spending on social events for which Defendant did not have sufficient funds, lack of appropriate governance, including routinely failing to consult the Board on significant issues, and poor purchasing decisions.

9. Mr. Borenstein and his staff cleaned up the Defendant's financial records so that they survived two "clean" audits, by external auditors with positive management letters; the first of their kind in a long time, and also internal audits from major donors. Mr. Borenstein also negotiated lines of credit with Wells Fargo and later, again with Morgan Stanley at reduced cost to the Defendant. Mr. Borenstein vastly improved banking, vendor, and donor relationships. Mr. Borenstein also routinely presented options to install proper financial controls and questioned the reckless financial behavior outlined, *supra.*, yet was generally ignored and rebuffed by CDF management.

10. Mr. Borenstein hired several high quality personnel in order to clean up the accounting department and they received high praise, from internal and external customers, while performing their duties as a team and individually for over a year. All of Mr. Borenstein's hires were discharged within a week after Mr. Borenstein was discharged by CDF management. All of Mr. Borenstein's hires were Latino. All were discharged. Only African American personnel were retained. Mr. Borenstein had previously protested the inquiry and defamation of

all Latino personnel, yet was rebuffed by Mrs. Marion Wright Edelman. The Latino employees could not, and would not corroborate false allegations of embezzlement and mismanagement levied by CDF management against Mr. Borenstein, resulting in their dismissal.

11. Mr. Borenstein was falsely accused of embezzling money from the CDF. These allegations were communicated internally and externally. An intensive investigation, conducted after Mr. Borenstein was discharged, yielded no evidence of any embezzlement by Mr. Borenstein.

12. Mr. Borenstein was allegedly terminated, per response letter dated June 7th, 2012 from CDF's attorneys, for using a CDF credit card for personal purchases, despite his always repaying the charges, and the open use by other, African American employees, who engaged in the use of CDF credit cards for personal purchases that were not repaid. No others were even reprimanded, much less dismissed, for their use of CDF credit cards. Mr. Borenstein's dismissal for this alleged reason was a pretextual, and disproportionate response to a commonly accepted practice that even Mrs. Marion Wright Edelman often engaged in herself.

13. Mr. Borenstein, despite being the CFO of the Defendant, a position, and hire previously approved by the CDF Board, was routinely, and persistently segregated from important meetings and decisions regarding the use of CDF funds that turned out to be improper uses of the funds.

14. Despite protests from Mr. Borenstein, CDF management routinely requested checks that were not supported by sufficient funds. Mr. Borenstein was criticized by CDF management, including the President, Marion Wright Edelman, for his protests.

15. Mr. Borenstein received nothing but favorable job performance reviews and high praise at Board meetings, yet on or about February 26, 2012, Mr. Borenstein was wrongly discharged for false, discriminatory and/or retaliatory reasons.

## COUNT I
**(Discrimination in Violation of the D.C. Human Rights Act, D.C. Code §2-1402.11)**

16. Paragraphs 1- 15 of this Complaint are adopted herein by reference.

17. The District of Columbia Human Rights Act prohibits discrimination in employment based upon "race, color, religion, national origin."

18. Despite the fact Mr. Borenstein completely cleaned up the financial records of Defendant; lowered the costs of borrowing money, improved vendor relations, improved Defendant's cash flow and improved the performance of Defendant's accounts receivables, Mr. Borenstein was wrongly terminated days before his retirement account vested. Defendant's actions, as described, *supra.*, constitute discrimination based upon race, color, religion and/or national origin in violation of the District of Columbia Human Rights Act, D.C. Code §2-1402.11.

19. Defendant deprived Mr. Borenstein of his right to enjoy equal opportunity to participate in all aspects of life, including employment, in violation of D.C. Code §2-1402.01.

20. Defendant's actions were malicious, and/or intentional, and/or reckless.

21. Defendant's actions in violation of the District of Columbia Human Rights Act, directly and proximately caused Mr. Borenstein loss of income and other economic benefits, job search costs, the loss of future employment opportunities, impairment of future earning capacity, and damage to his professional reputation. Defendant's violation of the District of Columbia Human Rights Act also caused Mr. Borenstein significant emotional distress, reducing his capacity to be productive and perform.

## COUNT II
**(Retaliation Against Plaintiff for Exercising and Enjoying Rights Protected Under the District of Columbia Human Rights Act in Violation of D.C. Code §2-1402.61)**

22. Paragraphs 1- 21 of this Complaint are adopted herein by reference.

23. Under the District of Columbia Human Rights Act, it is unlawful to retaliate against, or interfere with any person in the exercise, enjoyment of, or on account of having exercised or enjoyed any right granted or protected under the District of Columbia Human Rights Act.

24. Defendant retaliated against Mr. Borenstein because he opposed CDF management unjustifiably defaming and investigating Latino employees for racially motivated reasons, while CDF management protected sub standard African American workers.

25. Defendant's actions constitute unlawful retaliation in violation of D.C. Code §2-1402.61.

26. Defendant's actions were malicious, and/or intentional, and/or reckless.

27. Defendant's retaliatory actions damaged Mr. Borenstein's professional reputation and caused him embarrassment, humiliation and indignity.

28. Defendant's actions in violation of the District of Columbia Human Rights Act, directly and proximately caused Mr. Borenstein loss of income, and other economic benefits, job search costs, the loss of future employment opportunities, impairment of future earning capacity, and damage to his professional reputation. Defendant's violation of the District of Columbia Human Rights Act also caused Mr. Borenstein significant emotional distress, reducing his capacity to be productive and perform.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(A)     For any and all compensatory damages as may be determined by a jury; and further,

(B)     For any and all attorneys' fees and costs incurred by Plaintiff in the context of the present suit as may be permitted by law; and further,

(C)     For punitive damages in an amount to be determined by a jury

(D)     For such other relief as the Court deems appropriate.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

By: _____
Clifton M. Mount (#417462)
One Lafayette Center
Suite 300-S
1120 20th Street, N.W.
Washington, D.C. 20036
(202) 457-1600
FAX (202) 457-1678
cmount@jackscamp.com

Attorneys for Plaintiff

**JURY DEMAND**

The Plaintiff, by undersigned counsel, hereby demands trial by jury as to all appropriate issues.

_____
Clifton M. Mount